UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN A. GRACE, | ) |
| Plaintiff, | ) NO. CV-07-00016-JLQ |
| vs. | ) MEMORANDUM OPINION AND |
| | ) ORDER GRANTING DEFENDANT'S |
| MICHAEL ZIDACK, | ) MOTION FOR SUMMARY JUDGMENT |
| Defendant. | ) |

**Before the Court** is Defendant's Motion to Dismiss Plaintiff's Civil Rights Suit, which is really a Motion for Summary Judgment, heard without oral argument on July 31, 2007. Plaintiff is proceeding **pro se.** Defendant is represented by Assistant United States Attorneys Timothy M. Durkin and Andrew Biviano. There are no genuine issues of material fact in this case, so summary judgment is appropriate. Having reviewed the record, and being fully advised in this matter, **It Is Hereby Ordered** that Defendant's Motion for Summary Judgment is **Granted** for the following reasons.

## Background

Plaintiff claims that Defendant shot him as he attempted to flee from arrest following a drug transaction and claims a violation of his civil rights.

On January 2, 2004, the Eastern Washington DEA drug task force planned a crack cocaine operation involving a confidential informant (CI) buying drugs from the Plaintiff. The plan was to arrest the Plaintiff directly after he delivered the crack cocaine to the CI. The CI and the Plaintiff agreed to meet in the parking lot of a Rosauer's Supermarket in downtown Spokane, Washington. At

Memorandum Opinion Granting Defendant's
Motion for Summary Judgment - 1

approximately 4:30 p.m. the officers set up a covert surveillance coverage of the Supermarket parking lot area in five unmarked vehicles. Plaintiff claims that during the early evening he drove a silver SUV vehicle into the supermarket parking lot and contacted an adult female by the name of Stella Parisian in order to deliver crack cocaine to her. Ms. Parisian was cooperating with the Drug Enforcement Agency.

After the drug transaction had taken place, and Ms. Parisian had left Plaintiff's vehicle, the Plaintiff noticed two unknown individuals with something covering their heads approach his vehicle on foot as he backed away from them in the supermarket parking lot. Plaintiff stomped on the accelerator roaring the engine and squealing the tires. While backing out, Plaintiff struck a parking abutment covered with snow and a small tree and became stuck. In an attempt to free his vehicle, Plaintiff shifted into drive in an attempt to free his vehicle. A short time later, a Task Force vehicle that was attempting to block Plaintiff's rear escape struck the rear of Plaintiff's SUV and freed it from the snow berm.

Special Agent Zidack was positioned approximately 6 to 12 feet in front of the drivers's side of Plaintiff's SUV in an attempt to contain and arrest him. The SUV's headlights beam illuminated Agent Zidack, who was wearing a ballistics vest with yellow reflective lettering POLICE and an unzipped jacket.

Plaintiff states that he drove his vehicle toward Agent Zidack, after shifting the SUV into drive, but argues that Zidack's jacket could have covered the POLICE lettering. However, Plaintiff admits that Agent Zidack was yelling commands at Plaintiff to stop and that he was under arrest, commands, which he did not follow. Plaintiff contends that he looked away from Detective Taylor, who was standing just outside the driver's window and was yelling at the Plaintiff

"Police, stop the car" and looked directly forward at Agent Zidack as the SUV caught traction and accelerated forward at Agent Zidack, who was then 6-12 feet directly in front of the SUV and yelling "Stop"and "Police". The yelling was loud enough for the CI to hear and record. The commands were also heard by another undercover officer, who was sitting inside an undercover vehicle approximately 100 feet away. Plaintiff continued surging the SUV forward until he was about one foot away from Agent Zidack. In response, Agent Zidack fired his handgun through the windshield of the Plaintiff's SUV in an attempt to stop the vehicle. Because of the closeness of the SUV, Detective Taylor and others mistakenly believed Agent Zidack had been struck by the SUV. The bullet did not hit the Plaintiff, rather it exited through and shattered the rear windshield of the SUV. However, shattered glass from the windshield and a fragment of the bullet struck and injured Plaintiff's left eye and left cheek.

     Plaintiff then sped recklessly through residential downtown Spokane reaching speeds estimated to be 90 miles per hour, disregarding pedestrian and vehicular traffic on the streets. He ultimately drove the wrong way along one-way streets and through a red stop light and led agents on a circuitous route through downtown Spokane. Eventually, an officer crashed his vehicle into Plaintiff's SUV in order to stop him. Plaintiff, however, continued to accelerate to a high rate of speed and did not stop until other vehicles also crashed into him. He was hospitalized and eventually suffered partial blindness in his left eye.

     Plaintiff was ultimately charged by Indictment with one count of distribution of 5 grams or more of cocaine base and one count of assault on a federal officer. Following a four day jury trial, Plaintiff was convicted of both counts. He appealed his conviction to the 9th Circuit, which affirmed his

Memorandum Opinion Granting Defendant's
Motion for Summary Judgment – 3

conviction on both counts.

## Discussion

It is Plaintiff's position that Agent Zidack used excessive force in arresting him. However, this court finds that Agent Zidack is entitled to summary judgment on the ground of qualified immunity in the arrest of the Plaintiff.

A private right of action exists against police officers who, acting under color of state law, violate federal constitutional rights. 42 U.S.C. § 1983. The defense of qualified immunity, however, protects § 1983 defendants from liability unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

The Supreme Court analyzed a law official's qualified immunity defense in *Saucier v. Katz,* 533 U.S. 194 (2001). Following *Saucier,* a qualified immunity analysis must begin with the threshold question of whether the officer's conduct violated a constitutional right. *Id.* If a constitutional violation occurred, the second inquiry is whether the officer could have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established constitutional right.

Under the Fourth Amendment to the Constitution, Mr. Grace has a right to be free from excessive force. Officers may use only such force as is objectively reasonable under the circumstances. *Graham v. Connor,* 490 U.S. 386. 397 (1989). A court must therefore balance the nature and quantity of the intrusion against the countervailing governmental interests at stake. *Id.* At 396. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Memorandum Opinion Granting Defendant's
Motion for Summary Judgment - 4

*Id.* However, in *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court made clear that it is unreasonable for a police office to shoot a fleeing burglary suspect in the back where the suspect presented no danger to the police officer or the public. 20/20 hindsight and foresight would prohibit the shooting of a fleeing non-violent drug dealer as opposed to obtaining a warrant for an arrest on another day. However, those were not the circumstances facing Agent Zidack. He was being assaulted with a motor vehicle charging at him. While the test for reasonableness is often a question for a jury, this issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances. *See Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994). The consideration of reasonableness about the amount of force that is necessary in a particular situation must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.. *Id*.

In *Brausseau v. Haugen,* 543 U.S. 194 (2004), the Supreme Court dealt with a § 1983 claim by a suspect who was shot in the back while fleeing in a vehicle from a police officer, alleging the use of excessive force. The Court noted that it is clearly unreasonable under the Fourth Amendment for a police officer to seize an unarmed, non-dangerous felon by shooting him, but that when an officer has probable cause to believe that the suspect poses a threat of <u>serious</u> physical harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

The *Brausseau* Court looked at the principles enunciated in *Tennessee v. Garner,* 471 U.S. 1 (1985) and *Graham v. Connor,* 490 U.S. 386 (1989) which established that claims of excessive force are to be judged under the Fourth

```
Memorandum Opinion Granting Defendant's
Motion for Summary Judgment - 5
```

Amendment's "'objective reasonableness" standard. As the Court explained in *Garner,* it is unreasonable for an officer to seize an unarmed, non-dangerous suspect by shooting him dead. However, where the officer has probable cause to believe that the suspect poses a threat of <u>serious</u> physical harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." The *Brausseau* court then discussed qualified immunity.

> Qualified immunity shields an officer from suit when [he] makes a decision, that even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted.

The *Brausseau* court continued:

> Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted. *Saucier v.Katz,* 533 U.S. at 206 (qualified immunity operates to protect officers from the sometimes 'hazy border between excessive and acceptable force). Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability, or indeed, even the burdens of litigation.
>
> It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.
>
>> There is no doubt that *Graham v. Conner, supra,* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet, that is not enough. . . The relevant dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 201-202.

The Court then looked at a number of cases where the courts found no Fourth Amendment violation when an officer shot a fleeing suspect who presented

Memorandum Opinion Granting Defendant's
Motion for Summary Judgment - 6

a risk to others, including *Smith v. Freland,* 954 F.2d at 347 (6th Cir. 1992) (noting that a car can be a deadly weapon and holding the officers's decision to stop the car from possibly injuring others was reasonable.)  In that case, the officer and the suspect engaged in a car chase, which appeared to be at an end when the officer cornered the suspect at the back of a dead-end residential street.  The suspect, however, freed his car and began speeding down the street.  At this point, the officer fired a shot, which killed the suspect.  The court held that the officer's decision was reasonable and did not violate the Fourth Amendment.  It noted that the suspect had proven he would do almost anything to avoid capture and posed a major threat to others. The Supreme Court noted that this area is one in which the result depends very much on the facts of each case.

The Ninth Circuit in *Blanford v. Sacramento County,* 406 F.3d 1110 ( 9th Cir. 2005) held that officers acted in an objectively reasonable manner in shooting at the Plaintiff because a reasonable officer in their position at the time would have believed it was necessary.   In evaluating the government's interests, the court may consider such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor,* 490 U.S. 386 (1989).

Here, the governmental interest began with an attempt to arrest Mr. Grace for dealing crack cocaine.  As he attempted to flee the scene, the officers were faced with a man who refused to obey the officers' commands to stop and he continued to attempt to flee and resist arrest.  Grace, who heard the officers' commands, chose to ignore them and instead charged his vehicle towards Agent Zidack in an attempt to directly harm and/or interfere with Agent's Zidack's

```
Memorandum Opinion Granting Defendant's
Motion for Summary Judgment - 7
```

attempt to arrest him. This actual interference posed an immediate threat to Agent Zidack's personal safety.

Therefore, even if the force used by Agent Zidack was excessive, a matter not determined herein, Mr. Grace has not shown that the use by Agent Zidack of his firearm in overcoming the frantic attempt to flee, resisting a lawful arrest, and assaulting a federal officer violated a clearly established constitutional right. A reasonable police officer could properly believe that the use of his firearm in an attempt to avoid being hit by a SUV charging directly at him from a very short distance in a supermarket parking lot in an attempt to avoid arrest did not violate a clearly established constitutional right.

**IT IS SO ORDERED**. The Clerk is directed to enter this Memorandum Opinion and Order. enter judgment of dismissal with prejudice of the Amended Complaint and the claims therein, forward copies to Mr. Grace and to counsel for the Defendant, and close this file.

**DATED** this 5th day of August, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE